UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CRAIG ALAN WALL, SR.,

    Plaintiff,

v.                                        Case No. 8:22-cv-664-KKM-SPF

STATE OF FLORIDA, *et al.*,

    Defendants.
_____

## ORDER

Plaintiff Craig Alan Wall, Sr., moves to transfer this case from the Tampa Division to the Jacksonville Division of the Middle District of Florida under 28 U.S.C. § 1404 and Local Rule 1.04(b). (Doc. 38.) Defendants oppose Wall's request for an intra-district transfer. (Doc. 41.) Because Wall has not shown that transfer is appropriate, his motion is denied.

### I. BACKGROUND

On March 21, 2022, Wall filed a complaint challenging his method of execution in the Jacksonville Division of the United States District Court for the Middle District of Florida. (Doc. 1.) As reflected in his present motion and his earlier motion seeking the same result, Wall did not anticipate the impact of a long-standing administrative order (Standing Order). *See* Order In re: Civil Cases Seeking Stay of Death Warrant and/or Challenging Method of

Execution in State Death Penalty Cases, 6:09-MC-90-ORL-22. That Standing Order requires all cases "seeking a stay of execution or challenging the method of execution in state death penalty cases" be transferred to the division in which any previous habeas action was brought by that plaintiff, and, where possible, to the same judge handling the prior filing. *Id.* Where that judge "is no longer an active Judge in the Middle District of Florida," the Standing Order requires that the case be randomly assigned in that division. *Id.*

Wall's habeas petition remains pending before the Honorable Virginia Covington in the Tampa Division, but—as is her prerogative as a senior judge—she elects which kind of cases "[she] is willing and able to undertake." 28 U.S.C. § 294(c). Thus, under the Standing Order, the Clerk transferred Wall's case to the Tampa Division and randomly reassigned it.

Wall first moved to rescind the automatic transfer to the Tampa Division, lodging several attacks against the propriety of the Standing Order. (Doc. 22.) None were meritorious. (Doc. 33.) Wall now moves under 28 U.S.C. § 1404(a) and (b), and Local Rule 1.04(b), to transfer the case to the Jacksonville Division. Defendants oppose the motion. (Doc. 41.) Like the prior motion to undo the effect of the Standing Order, his arguments are unconvincing.

## II. ANALYSIS

### A. Transfer Under Local Rule 1.04(b)

Local Rule 1.04(b) requires a party to commence "an action in the division to which

2

the action is most directly connected or in which the action is most conveniently advanced." It also instructs a judge to "transfer the action to the division most consistent with the purpose of this rule." *Id.*

Wall contends that Local Rule 1.04(b) compels transfer to the Jacksonville Division because it "is clearly the most directly connected division, and the division in which the action is most conveniently advanced." (Doc. 38, p. 17.) The Standing Order, entered under the authority of the then-Chief Judge of the Middle District of Florida, contradicts Wall's reading of how Local Rule 1.04(b) applies to his case.

As explained in the earlier order denying Wall's motion to rescind, "the Tampa Division is arguably directly connected to, and a convenient place to advance, his current action" because his habeas petition remains pending here. (Doc. 33, pp. 4-5.) Implicit within the Standing Order's directive is a determination that the Tampa Division *is* the most convenient division for the action to be advanced. One can imagine several reasons supporting this conclusion, even if the same judge is not presiding over both matters. For example, the division's familiarity with the prisoner's litigation history or the ability to schedule evidentiary hearings in tandem (assuming the prisoner is entitled to one under § 2254 and his execution claims). In essence, the United States District Court for the Middle District of Florida—as a matter of internal docket management and resource allocation—has already determined that the Tampa Division

3

is the most convenient venue to litigate the matter. Rule 1.04(b) does not operate to undo that determination. Nor does Wall possess any statutory right to a particular division within the District, for reasons already explained. (*See* Doc. 33 at 6.)

Additionally, to the extent that the Standing Order is contradicted by Local Rule 1.04(b), the Standing order, as the more specific rule governing assignment of cases challenging methods of execution, controls. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS § 28, at 183, 186 (2012) ("If there is a conflict between a general provision and a specific provision, the specific provision prevails."). The Local Rules counsel in favor of this reading as well. Local Rule 1.01(b) authorizes a judge to "modify all or suspend" the Local Rules when necessary. As such, to the extent the Standing Order conflicts with Local Rule 1.04(b) at all, the Standing Order "suspends" that Rule for the actions it pertains to.

**B. Transfer under 28 U.S.C. § 1404**

Wall also moves to transfer the case to the Jacksonville Division under 28 U.S.C. § 1404. (Doc. 38, p. 4). Subsection 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the

4

district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). In essence, Congress authorizes a district court to transfer an action to another district or division if certain criteria are satisfied.

First, the transferee venue must be a "district or division where [the case] might have been brought," meaning it must have personal and subject matter jurisdiction and offer a proper venue. *See Hoffman v. Blaski*, 363 U.S. 335, 342–44 (1960) (determining that transfer under § 1404(a) is only appropriate to a jurisdiction where it could be transferred without requiring defendant's consent to personal jurisdiction or venue). Second, a court must determine whether transfer is appropriate in the interests of convenience and justice by weighing, at least, the following general factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interest of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

Subsection 1404(b) also authorizes that, "[u]pon motion, consent or stipulation *of all parties*, any action, suit or proceeding of a civil nature . . . may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district." (emphasis added). Some courts have reasoned that § 1404(b) permits intra-district transfers only when all parties agree to the transfer. *See, e.g.*, *Lead Indus. Ass'n, Inc. v. OSHA*, 610 F.2d 70, 79 n.17 (2d Cir 1979) (noting the limitation in § 1404(b)); *In re Gibson*, 423 F. App'x 385, 390 (5th Cir. 2011) (explaining that § 1404(b) "authorizes intra-district transfers of proceedings only when all of the parties consent or agree"); *Combs v. Fla. Dep't of Corr.*, 461 F. Supp. 3d 1203, 1206 (N.D. Fla. 2020) (Frank, Mag. J.) (same). Although the series-qualifier canon certainly has limits, *see Facebook v. Duguid*, 141 S. Ct. 1163, 173–75 (2021) (Alito, J., concurring in the judgment), I am inclined to agree here that the most natural reading of the statutory text is that "of all parties" modifies the entire list—"motion, consent or stipulation"—instead of only the last noun, "stipulation." Of course, had Congress employed the Oxford comma, the series-qualifier canon's application would be all the stronger as consent and stipulation—by definition—require both parties to agree. *See Consent*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A voluntary yielding to what another proposes or desires; agreement, approval, or permission regarding some act or purpose, esp. given voluntarily by a competent person; legally effective assent."); *Stipulation*, BLACK'S LAW DICTIONARY (11th

6

ed. 2019) ("A voluntary agreement between opposing parties concerning some relevant point."). Without the comma after "consent," it is possible that the inclusion of "of all parties" following "consent or stipulation" amounts to nothing more than mere redundancy as a modifier of those two nouns but not of "motion." But there is a textual clue within the same subsection that Congress simply disregarded the grammatically preferable use of the Oxford comma throughout § 1404(b): it omitted that comma in the phrase "any action, suit or proceeding of a civil nature." What to make of this subsection? That Congress omitted the Oxford commas in both lists and that § 1404(b) includes two examples of the series-qualifier canon where the postpositive modifiers apply to the entire parallel list of nouns.

All that to say, § 1404(b) likely requires "all parties" join in a motion to transfer. Thus Wall's assertion for transfer under § 1404(b) fails for lack of consent from Defendants, leaving his only avenue for transfer through § 1404(a). But even if § 1404(b) did not require unanimous support, courts ordinarily weigh the totality of the circumstances including the same nine factors considered under § 1404(b) as considered under § 1404(a). *See Reyes v. JA & M Developing Corp.*, No. 12-61329, 2012 WL 3562024, at *3 (S.D. Fla. Aug. 17, 2012) (Rosenbaum, J.); *AGSouth Genetics LLC v. Terrell Peanut Co.*, 2009 WL 4893588, at *2 (M.D. Ga. Dec. 9, 2009) (reasoning that the analysis is the same under § 1404(a) and § 1404(b)). In the end, under either § 1404(a) or § 1404(b), Wall must carry his burden to

7

show that transfer is appropriate under § 1404 by establishing that the convenience factors weigh in his favor. *See In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

Wall argues that each of the above-listed convenience factors supports transfer to the Jacksonville Division. I disagree.

First, regarding factors (1) and (5)—the convenience of and ability to compel witnesses—Wall contends that "the convenience of witnesses weighs in favor of transfer to Jacksonville." (Doc. 38 at 8.) He "anticipates" that some witnesses will include other inmates from Florida State Prison (FSP) and Union Correctional Institution (UCI), correctional employees from those institutions, and expert witnesses "traveling from out of state by air." (*Id.* at 7-8.) As an initial matter, Wall concedes that the expert witnesses must travel from outside the District and neither Tampa nor Jacksonville is more convenient for them. (Doc. 38 at 8.) Next, even at this pre-discovery stage, Wall's gestures of calling unknown and unnamed witnesses do not establish that the Tampa Division is either inconvenient to these witnesses or that this Court lacks the ability to compel their appearance. Indeed, the materiality of these witnesses' testimony is impossible to assess without some identification of who they might be and what they might be called to say. Although not binding, other judges have concluded likewise in similar circumstances. *See, e.g.*, *Combs*, 461 F. Supp. 3d at 1209; *Nat'l Trust Ins. Co. v. Penn. Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 3d 1236, 1243 (M.D. Fla.

8

2016) (Howard, J.); *Smith v. Colonial Penn Ins. Co.*, 943 F. Supp. 782, 784 (S.D. Tex. 1996) (noting that "vague statements about the convenience of unknown and unnamed witnesses is insufficient to convince" a court to transfer venue); *Nelson v. Master Lease Corp.*, 759 F. Supp. 1397, 1402 (D. Minn. 1991) ("[T]he party seeking the transfer must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover."). Finally, where witnesses are employees of a party, such as the potential Florida Department of Corrections employees, Defendants can compel their attendance and testimony at trial, and Defendants do not complain that their employees would be inconvenienced by a trial in Tampa. (Doc. 41 at 7–8.) Therefore, factors (1) and (5) do not point to transfer.

Second, Wall posits that the documentary evidence will be located at FSP, UCI, or the Department of Corrections in Tallahassee, and thus that factor (2)— the location of relevant documents and the relative ease of access to sources of proof—weighs in favor of Jacksonville being more convenient. (Doc. 38 at 9.) But because all documents are electronically available, neither Tampa nor Jacksonville offers superior ease of access to them. *E.g.*, *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents."); *see also* Charles A. Wright & Arthur A. Miller, *Fed. Prac. & Proc.* § 3853 (Rev. 4th ed.) ("[A] general allegation . . . will not prevail. The moving

9

party must establish the location of the documents in question, their importance to the resolution of the case, and the inability to move or copy them easily."). Thus, factor (2) does not support Wall's motion for a transfer.

Third, Wall argues that factors (3) and (6)—the convenience of the parties and his relative lack of means—support transfer to Jacksonville. This latter argument lacks force in the context of an inmate whose daily needs and expenses are provided by Defendants and whose legal representation is funded by the federal government. *See* Order, Doc. 23, *Wall v. Secretary*, No. 8:19-cv-2496 (M.D. Fla Dec. 18, 2019) (appointing the Capital Habeas Unit to represent Wall and authorizing federal funds to do so). There is nothing about his limited financial means that would force him to forgo his method of execution challenge if it remained in Tampa instead of Jacksonville. And Defendants, who will bear the costs of transporting Wall to and from either courthouse, raise no concern about the financial burden of transporting Wall to Tampa.

In a slightly different vein, Wall asserts that Jacksonville is more convenient because it is only a one-hour drive from UCI where he is imprisoned, while Tampa is a three-hour drive. Fair enough. But Defendants indicated that they will house Wall locally if the action proceeds in Tampa and his court attendance is required. Thus, if transferred to Jacksonville, Wall would likely face two hours of prison transport each day; if the action remains in Tampa, Wall will

almost certainly face a far shorter daily commute during trial and only suffer the inconvenience of the three-hour drive one time. Given that the parties estimate that trial will last four days, (*see* Case Management Report, Doc. 48 at 3), this consideration weighs in favor of Tampa, not Jacksonville.

Finally, Wall objects to the "painful" transport experience generally. (Doc. 38 at 7–9.) But shackling and necessary security measures for death row inmates who challenge their method of execution naturally accompanies the process of litigating those claims. To the extent Wall attempts to raise security concerns on behalf of the State, Defendants unequivocally oppose transfer and raise no security concern or other burden with litigating in Tampa. Given that they are far better suited to analyze the convenience to themselves, this last consideration under factors (3) and (6) similarly does not support transfer.[1]

Fourth, Wall contends the claims involve facts that occurred or will occur at FSP, (Doc. 38 at 10–11), making factor (4)—the locus of operative facts—favor transfer. The Jacksonville Division undoubtedly encompasses FSP. But I am not convinced that the Tampa Division would not also be appropriate, given that the death sentence giving rise to his current claims was rendered within the Tampa Division. (Doc. 35 at 10.) More significantly, Wall's claim is

---

[1] As Wall's own motion recognizes, the convenience of his court-appointed counsel is not ordinarily relevant to a transfer request. (Doc. 38 at 9.) As things stand now though, with the exception of Mr. Belitzky, all counsel of record are located in Tampa.

premised on his election of electrocution as his preferred method of execution, and he alleges facts concerning this election claim that occurred in Pinellas County, Florida, which is within the Tampa Division. (*Id.* at 15–19.) This factor remains neutral in the transfer equation, as there are multiple loci of operative facts. *See, e.g., Combs*, 461 F. Supp. 3d at 1211–12 ("When there are multiple loci of operative facts and no single locus is primary . . . courts treat this factor neutral."); *Bell v. Rosen*, 2015 WL 5595806, at *11 (S.D. Ga. Sept. 22, 2015) ("[W]here there is no single locus of the operative facts, this factor is neutral and does not support a transfer."). Therefore, factor (4) weighs neither in favor nor against transfer.

Fifth, Wall relies on the historical reality that most challenges to Florida's execution protocols have arisen in the Jacksonville Division to assert that those judges have "a special familiarity with the" applicable law and further concludes that he "has reason to believe that this Court lacks significant experience with § 1983 cases challenging Florida's method of execution." (Doc. 38 at 12–13.) As a result, Wall argues that factor (7)—familiarity with governing law—points to transfer to Jacksonville. He is mistaken. This factor ordinarily applies when one district is tasked with applying the governing state law where another district is located, and even there, offers little usefulness. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 67–68 (2013) (noting that "federal judges routinely apply the law of a State other than the State in which they sit" and refusing to find "any exceptionally

12

arcane features of Texas contract law that are likely to defy comprehension by a federal Judge sitting in Virginia"). Wall cites to no caselaw deeming it compelling reason for an *intra-district* transfer to another judge sitting in the same State and applying the same federal law. Indeed, that sort of logic runs counter to the federal judiciary's structure and the nature of Article III courts. *See Health Freedom Def. Fund, Inc. v. Biden*, 572 F. Supp. 3d 1257, 1266–67 (M.D. Fla. 2021) (Mizelle, J.) (denying intra-district transfer of a case on this basis because "Article III contemplated a pyramid and hierarchical shape of the federal judiciary" and "consolidating cases . . . before a smaller pool of district judges hinders this process while swelling the influence those judges wield"). One last item to note: none of the Jacksonville cases that Wall cites include a constitutional challenge like his own to Section 922.105(2), Florida Statutes; that Division thus does not have specialized expertise (if that were a compelling reason at all) to adjudicate Wall's claim. Because the judges in the Jacksonville Division are no better situated to apply federal law or understand the nuances of Florida law than the judges in the Tampa Division, factor (7) does not point to transfer.

Wall's primary contention is that factor (8)—his choice of forum—points to transfer. (Doc. 38 at 14.) Generally, "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (concluding the district court did not abuse its discretion in denying

13

motion to transfer from Florida to Michigan because to do so would simply shift inconvenience from defendant to plaintiff). I doubt this consideration even applies to intra-district transfers, as no party is entitled to their preferred division within a district and the Local Rules authorize transfers without any party's consent. (*See* Doc. 33 at 6.) But even if factor (8) is relevant here, this case presents an unusual procedural posture. The Standing Order required a Tampa Division assignment, necessitating a transfer from the Jacksonville Division, which is Wall's desired forum. Wall is now the party seeking transfer, not Defendants. To transfer based on his preference of Division at this juncture would require overriding the Standing Order, and Wall has yet to show that the convenience factors counsel in favor of doing that. Moreover, the point of strong deference to a plaintiff's choice coalesces around the entire point of weighing these convenience factors at all: ordinarily, one party or another will be more put out by a particular venue and the law favors the plaintiff's choice absent compelling reasons to deviate. But here, even assuming the plaintiff's choice of division is entitled to some deference, the Standing Order provides a compelling reason to deviate. And Wall does not suffer any financial, physical, or legal adversity in Tampa compared to Jacksonville. To the contrary, most of the convenience factors favor Tampa over Jacksonville. Therefore, I do not find that factor (8) supports transfer to Jacksonville, or at most, only marginally supports such a transfer.

Finally, Wall argues that considerations of trial efficiency and the interests of justice

14

weigh in favor of transfer. Regarding trial efficiency, Wall asserts that "this case is no closer to trial than it was the day that it was filed in the Jacksonville Division." (Doc. 38 at 15.) Not quite. The Court has ruled on Wall's earlier motion to undo the transfer order, reviewed the pending motion to dismiss, entered orders on other motions, and already entered a case scheduling order setting a trial date. (*See* Doc. 4; Doc. 10; Doc. 33; Doc. 43; Doc. 49.) Transfer to the Jacksonville Division would not promote trial efficiency.

### III. Conclusion

Weighing the totality of the § 1404 factors, the Court determines that a transfer to Jacksonville Division is not in the interest of justice and declines to exercise its discretion to transfer the case. Wall's Opposed Motion to Transfer Venue to the Jacksonville Division of the Middle District of Florida Pursuant to 28 U.S.C. § 1404(a) and (b) and Local Rule 1.04(b) (Doc. 38) is **DENIED**.

**ORDERED** in Tampa, Florida, on September 12, 2022.

Kathryn Kimball Mizelle
United States District Judge

15